**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **HAZEL COLÓN VÁZQUEZ; AND MARÍA DEL MAR FREDERIQUE GUZMÁN** | CIVIL NO. |
| Plaintiffs, | RE: |
| **v.** | **DERIVATIVE ACTION; TRADEMARK INFRINGEMENT; TEMPORARY RESTRAINING ORDER; PRELIMINARY AND PERMANENT INJUNCTION; AND DAMAGES** |
| **JOSÉ DANIEL BAEZ PÉREZ; JORGE ANTONIO RODRÍGUEZ GONZÁLEZ; MERCADO CARIBEÑO, L3C; MARIÁNGEL GONZALES; JOHN DOE; ABC CORPORATION** | |
| Defendants. | |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiffs, Hazel Colón Vázquez, and María del Mar Frederique Guzmán, through the undersigned counsel and respectfully allege and pray as follows:

### I.    PRELIMINARY STATEMENT

1. The case before this Court is a derivative action brought by members of a Company against two fellow members for their willful infringement of the Company's trademarks and for actively appropriating the Company's goodwill and diverting it towards their infringing business.

2. There is no genuine dispute of material fact regarding the lawful ownership of the trademarks at issue, as the Supreme Court of Puerto Rico has rendered a final and binding judgement on this matter. Defendants' motion for reconsideration of

that decision was denied on October 31, 2024, further confirming the Company's ownership of the trademark and rendering said ruling final and conclusive.

## II.    <u>JURISDICTION AND VENUE</u>

3.  This Honorable Court has original federal question jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), as this case involves substantial claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*. It also has supplemental jurisdiction over Puerto Rico law claims pursuant to 28 U.S.C. § 1367(a).

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and because the Defendants are subject to personal jurisdiction in this District.

## III.    <u>NATURE OF THE ACTION</u>

5.  This is a derivative action brought pursuant to Federal Rule of Civil Procedure 23.1 by Plaintiffs, Hazel Colón Vázquez, and María del Mar Frederique Guzmán, who are members of Mercado Caribeño, L3C, a low-profit limited liability company organized under the laws of the Commonwealth of Puerto Rico (the "Company"), on behalf of the Company and for its benefit.

6.  This derivative action is brought against Defendants Jorge Antonio Rodríguez González and José Daniel Báez Pérez, who are also members of the Company, for trademark infringement, unfair competition, false designation of origin, and trademark dilution in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and 1125(c).

7. Plaintiffs also seek a temporary restraining order, preliminary and permanent injunctive relief, as well as monetary damages on behalf and for the benefit of the Company. Plaintiffs further seek to recover attorneys' fees, costs, and expenses that were personally incurred to prosecute this case on behalf and for the benefit of the Company.

## IV.    THE PARTIES

8. Plaintiff Hazel Colón Vázquez, an individual, is a member of Mercado Caribeño, L3C, who currently holds, at least, 22.5% of the Company's membership interest and serves as the Company's Vice-President of the Board of Directors. Ms. Colón is domiciled in the Commonwealth of Puerto Rico and resides in the municipality of San Juan.

9. Plaintiff María del Mar Frederique Guzmán, an individual, is a member of Mercado Caribeño, L3C, who currently holds, at least, 19.5% of the Company's membership interest and serves as the Company's Secretary of the Board of Directors. Ms. Frederique is domiciled in New York City.

10. Defendant José Daniel Báez Pérez ("Báez"), an individual, is a member of Mercado Caribeño, L3C, who currently holds, at least, 23% of the Company's membership interest and serves as the Company's President of the Board of Directors. Upon information and belief, Defendant is domiciled in New York City.

11. Defendant Jorge Antonio Rodríguez ("Rodríguez"), an individual, is a member of Mercado Caribeño, L3C, who currently holds, at least, 16.5% of the Company's membership interest and holds the position of "vocal" in the Company's Board of

Directors. Upon information and belief, Defendant is domiciled in the Commonwealth of Puerto Rico and resides in the municipality of Bayamón.

12. Defendant Mariángel Gónzales, an individual, is an ex-member of Mercado Caribeño, L3C, who used to hold 18.5% of the Company's membership interest and held the position of Treasurer of the Company. Upon information and belief, Defendant is domiciled in the Commonwealth of Puerto Rico and resides in the municipality of San Juan.

13. Mercado Caribeño, L3C, is a low-profit limited liability company organized under the laws of the Commonwealth of Puerto Rico, duly authorized to do business in Puerto Rico with its principal place of business listed in the Commonwealth of Puerto Rico's Department of Registry at 1511 Ave. Juan Ponce de León, Parada 22, San Juan, P.R. 00909. The Company is joined in the present complaint as a **Nominal Defendant** due to the nature of the derivative actions.

14. Defendant John Doe is an unknown individual or entity who, upon information and belief, has participated in the conduct that gives rise to this action. The identity of John Doe is unknown to Plaintiff at this time, and Plaintiff will amend this Complaint to reflect John Doe's true identity when, and if, it is ascertained.

15. Defendant ABC Corporation is a fictitious name for an unknown business entity or corporation that, upon information and belief, has engaged in actions giving rise to this action. Plaintiff does not presently know the exact legal status, formation, or identity of ABC Corporation but will amend this Complaint to substitute the true name and identity when, and if, ascertained.

## V.    STATEMENT OF FACTS

### A.  The "Birth" of Mercado Caribeño, L3C and its "MECA" Trademark

16. The *MECA* brand is widely recognized both locally and internationally within the art world as the hallmark of one of the most prominent and influential art fairs in Puerto Rico and the Caribbean. By curating an annual cultural showcase featuring some of the most exceptional talent the region has to offer, *MECA* has established itself as an invaluable platform for emerging artists to present their work. More importantly, *MECA* has become a symbol of cultural and artistic identity for the Caribbean, embodying the region's vibrant and dynamic creative spirit.

17. Since its inception, MECA's business activities consisted of hosting an international art fair which provided exhibition spaces for independent visual artists and art galleries from Puerto Rico, the United States, and the Caribbean. This also served as a platform to showcase and sell their work to the attending public.

18. The Company would make a profit by charging a fee for said spaces, charging an entrance fee for their events, and selling *MECA*-related merchandise, such as the *MECA LOCAL* guidebook. See **Exhibit #1**.

19. While the first edition of the *MECA Art Fair* was still in its planning stages, on January 10, 2017, Mercado Caribeño, L3C, was incorporated. See **Exhibit #2**.

20. The purpose of this newly created entity was to produce and promote the *MECA Art Fair,* as well as to conduct, operate, and handle all the business related to said event.

21. As reflected in the Company's Certificate of Formation issued by the Department of State of the Commonwealth of Puerto Rico, the Company's administrators were Defendants Báez and Rodríguez, and Plaintiff Hazel Colón. See **Exhibit #3**.

22. After months of planning, the *MECA Art Fair* was held for the first time in June 2017, in San Juan, Puerto Rico.

23. Following the first edition of *MECA*, and due to their immense contributions to the art fair's success, Plaintiffs Colón and Frederique officially became members of Mercado Caribeño, L3C, acquiring membership interests in the Company and being appointed to the Board of Directors.

24. Following the success of its inaugural edition and the international recognition it garnered within the art world, the Company hosted two subsequent editions of the *MECA Art Fair* in 2018 and 2019. With each passing year, the event grew in popularity, prominence, and profitability.

25. In addition to hosting the *MECA Art Fair,* the Company expanded its *MECA* brand to host other art-related events such as *MECA Illustration Art Fair*, *MECAnismos, MECA Art Talks* (a podcast-type project consisting of interviews and talks about art and culture), as well as collaborating in social benefit programs, among others.

26. Through these events and programs, *MECA* established itself as a widely recognized trademark within the art world of Puerto Rico and the Caribbean, distinguished primarily by its annual art fair and various *MECA*-related arts and culture initiatives.

27. Through the use of the *MECA* trademark to identify their business activities, the Company acquired exclusive ownership rights to said trademark given that it was the first entity to use the mark in commerce.

28. As a result of its widespread, continuous, and exclusive use of the *MECA* trademark to identify its goods and services -and the Company as their source- the Company owns valid and subsisting federal statutory and common law rights to the *MECA* trademark.

29. The Company's *MECA* trademark is distinctive to both the consuming public and the Company's trade.

30. As a result of its distinctiveness and widespread use and promotion throughout the United States, Puerto Rico and abroad, the Company's *MECA* trademark is a famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendants alleged herein.

**B. <u>Dissolution of Mercado Caribeño, L3C, and The Supreme Court of Puerto Rico's Landmark Decision Regarding Ownership of the MECA Trademark</u>**

31. Following three successful editions of the *MECA Art Fair*, the COVID-19 pandemic disrupted the Company's plans to hold the annual editions in 2020 and 2021. Despite this setback, the Company continued to use the *MECA* trademark for its other programs and remained committed to resuming its operations as soon as circumstances allowed.

32. However, during this time, the members of the Company started having internal issues, mostly due to the fact that Defendant Jorge Rodríguez was diverting funds from the Company for his personal use and for being accused of domestic violence, which became public knowledge and affected the image of the Company.

33. After several attempts to find a way forward, the members unanimously decided to dissolve the Company and distribute the Company's assets according to their membership interest percentages as per the Company's Operating Agreement.

34. The Members also agreed to start over as a non-profit entity and continue to produce the *MECA Art Fair* under this new corporate structure. However, unbeknownst to Plaintiffs, Defendants Rodríguez and Báez had other plans.

35. Shortly after the dissolution of the Company, Báez filed a trademark application before the United States Patent and Trademark Office, claiming to be the sole owner of the *MECA* trademark, while the "*return of the MECA Art Fair*" was announced in both Defendants' social media and in the Company's *MECA Art Fair* social media profiles.

36. These actions triggered a *cease and desist* letter from Plaintiffs demanding their equal rights as to the Company's *MECA* trademark and seeking an amicable resolution to the matter at hand. Defendants responded with a threat to sue them if they attempted to use the mark.

37. In response to Defendants' threat, Plaintiffs filed a complaint for trademark infringement and sought injunctive relief under Article 26 of the Puerto Rico Trademark Act. Defendants moved to dismiss the case, arguing that Plaintiffs lacked standing to bring the suit, claiming they had no rights to the *MECA*

trademark because Defendants were the first to use it in commerce. Defendants based their claim on two social media posts referring to *MECA* that were made prior to the Company's incorporation. Plaintiffs countered that mere planning to conduct business does not constitute use in commerce under applicable law, and asserted that the first valid use in commerce was made by the Company.

38. After an evidentiary hearing, the Court of First Instance granted Defendants' motion to dismiss. In essence, the Court reasoned that since Defendants had conducted planning activities prior to the Company being formed, they were the first ones to use the mark in commerce, thus they were the rightful owners of the mark. The Court of Appeals agreed and confirmed.

39. Convinced that the inferior courts had failed to resolve the case pursuant to applicable law, Plaintiffs filed a writ of *certiorari* before the Supreme Court of Puerto Rico.

40. **In a unanimous decision, the Supreme Court of Puerto Rico, ruled in favor of Plaintiffs and reversed the inferior courts' rulings, holding that the Company was the rightful owner of the *MECA* trademark**. See **Exhibit #4**.

41. After a thorough and well-reasoned analysis of the first-use doctrine, the Court determined that Defendants' social media posts constituted mere token use, insufficient to establish ownership rights to the trademark. Consequently, the Court ruled that the Company was the rightful owner of the *MECA* trademark, as it was the first to make bona fide use of the mark in commerce in connection with the relevant goods and services.

42. In its detailed analysis of the principle that a trademark is inseparable from the goodwill it represents, the Supreme Court of Puerto Rico further held that neither the Defendants nor the Plaintiffs could be considered the rightful owners of the *MECA* trademark. The Court ruled that, as the mark was deemed an indivisible asset of the Company, it could not be divided or apportioned among the Company's Members.

43. Since the *MECA* trademark is an asset of the Company, and the Company's Operating Agreement did not address the ownership of intellectual property upon dissolution, the Court remanded the case to the Court of First Instance. **The Court determined that the Company remained active under Article 9.08 of the Puerto Rico Corporations Act and ordered the appointment of a judicial administrator to oversee the liquidation of the Company's assets, including the *MECA* trademark, in accordance with Article 9.09 of the Puerto Rico Corporations Act**.

C. **Defendants' Unlawful use of the *MECA* Trademark and Other Unlawful Activities**

44. Notwithstanding the fact that the ownership and proprietary rights to the *MECA* trademark were under judicial review (thus the ruling in Defendants' favor was not final), Defendants willfully continued to use the mark in commerce in connection with the same goods and services sold and provided by the Company.

45. Specifically, some of the Defendants' infringing acts include:

i.   Purchase and advertisement of at least two web domains boasting the *MECA* name (www.mecaartfairs.com and www.mecaarthop.com). See **Exhibits #5 and #6**;

ii.  Produced, advertised, and held an edition of the *MECA Art Fair* in the Dominican Republic in March 2023. See **Exhibit #7;**

iii. Produced, advertised, and held an edition of the *MECA Art Fair* in the Dominican Republic in March 2024. See **Exhibit #8**;

iv.  Produced, advertised, and held an edition of *MECA Art Talks* event. See **Exhibit #9**;

v.   Produced, advertised, and sold miscellaneous merchandise bearing the *MECA* trademark. See **Exhibit #10, #11, and #12**;

vi.  Sold, assigned, or otherwise disposed of the Company's proprietary rights to the *MECA LOCAL* book in favor of Defendant Mariángel Gonzáles, who has rebranded the book as "Kiosk(o)" and it is now one of the main sponsors and/or contributors of the Defendants' infringing business venture. See **Exhibits #13, #14 and #15**;

vii. **Produced, advertised, and are <u>currently holding</u> a week-long event called *MECA ArtHop* in San Juan, Puerto Rico, from November 17-24, 2024.** See **Exhibit #16 and #17;**

viii. **Have used and continue to deliberately use the Company's *MECA Art Fair*** social media platforms to advertise their past events and the ongoing *MECA ArtHop* event. See **Exhibit #18, #19, #20 and #21;** and

ix.    Defendant Jorge Rodríguez granted a 47-minute interview in the "*Ehibicionista"* podcast in which he asserted that "*ArtHop*" was a "transformation of *MECA*" and the "new brand" under which Defendants were going to keep conducting the business previously performed under the *MECA* brand.

46. In addition to the above actions, Defendants posted a disclaimer on the www.mecaartfairs.com website which read "*MECA® is a registered trademark of Mercado Caribeño, Inc."*. **See Exhibit #22.**

47. The above disclaimer appears to indicate that Defendants have unlawfully sold, assigned, or otherwise disposed of the *MECA* trademark in favor of a third party, in this case, Mercado Caribeño, Inc (similar to the Company's name, Mercado Caribeño, L3C). If the above is accurate, the Company has been unlawfully stripped of its most valuable asset by Defendants, who have in turn received compensation for a sale that they did not have the right to conduct, thus constituting an unjust enrichment at the expense of the Company.

48. Moreover, Defendants have gone as far as participating in an interview with Puerto Rico's main newspaper, *El Nuevo Día,* stating that *MECA ArtHop* was a preamble of the next edition of the *MECA Art Fair* that will take place in 2025. **Said interview was conceded just two days after the Supreme Court's decision**. See **Exhibit #23.**

49. Defendants unlawful use of the *MECA* trademark in connection with the "*MECA ArtHop"* and "*ArtHop"* marks is a willful intent to deceive the public and create a false designation of origin, as well as to tricking consumers to believe that "*ArtHop*"

is the Company's new concept of its famous and renown *MECA Art Fair,* and/or that there has been a "rebranding" of *MECA* authorized by the Company, which is not the case. See also **Exhibit #24**.

50. Defendants have used the *MECA* trademark in connection with the infringing "*MECA ArtHop*" and "*ArtHop*" marks in "sponsorship decks" in order to deceive funders, investors and sponsors into funding Defendants' infringing ventures under the false premise that said project is another *MECA* event or that is affiliated, approved or otherwise connected to the Company. See **Exhibit #25**.

51. The Defendants' use of a mark that is identical to the Company's *MECA* trademark to represent their separate business ventures constitutes trademark infringement under applicable law.

52. The Defendants use of the Company's trademark for their own separate venture results in consumer confusion as to source.

53. The goods and services Defendants have distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are exactly the same as those provided by the Company.

54. The goods and services Defendants have distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark through the same trade channels used by the Company.

55. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's goods and services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants'

goods and services, originate from, are associated, or affiliated with, or otherwise authorized by the rightful owner of the *MECA* trademark, which is the Company.

56. Defendants' infringing acts as alleged herein have resulted in actual confusion as evidenced by social media posts that have been published by artist and galleries that will be participating in the upcoming "*MECA ArtHop* event", which reference the Company's *MECA* trademark and the Company's *MECA Art Fair* social media profiles, and which have been reposted by Defendants in the infringing mark's "*ArtHop*" social media profiles. See **Exhibits #26 - #31.**

57. Defendants' acts are willful with the deliberate intent to trade on the goodwill of the Company's *MECA* trademark, cause confusion and deception in the marketplace, and divert the Company's clients to the Defendants.

58. By trading on the goodwill of the Company's *MECA* trademark, and purposefully using the Company's social media profiles to divert the public, consumers, clients, and potential clients on to the Defendants' business under the false premise of a "rebranding", Defendants are devaluing the Company's trademark, goodwill, and reputation, thus ultimately having the effect of rendering the *MECA* trademark worthless. This will eventually affect all the Company's members, especially Plaintiffs, given that, as mandated by the Supreme Court of Puerto Rico, the *MECA* trademark must be liquidated and the remaining assets, divided between said members.

59. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to the Company, its members, and to its

valuable reputation and goodwill with the consuming public for which the Company has no adequate remedy at law.

60. Moreover, upon information and belief, as evidenced by **Exhibits #13, #14 and #22**, Defendants have already sold, assigned, or otherwise disposed of some of the Company's most valuable intellectual property, which warrants this Honorable Court's immediate intervention.

## VI.    CAUSES OF ACTION

### A.    First Cause of Action: Derivative Action

61. Plaintiffs allege and incorporate by reference the foregoing paragraphs.

62. Plaintiffs are entitled to bring the present derivative action on behalf and for the benefit of the Company, under Federal Rule of Civil Procedure 23.1, and under Article 19.53 of the General Corporations Act of Puerto Rico, 14 L.P.R.A. § 4003, given that Defendants, who are members of the Company, have incurred and continue to incur in unlawful actions that have caused and continue to cause direct and irreparable harm to the Company's best interests.

63. Plaintiffs were members of the Company at the time some of the unlawful actions alleged in this complaint took place; Plaintiffs are currently members of the Company and some of the unlawful actions alleged in this complaint are currently taking place; and Plaintiffs will continue to be members of the Company throughout the litigation of this case, and thus, will vigorously defend the best interests of the Company until the closing of the case.

64. The Company is currently composed of four members: the two Defendants and the two appearing Plaintiffs. Therefore, Plaintiffs will vigorously defend the best

interests of all the members that are similarly situated in enforcing the rights of the Company.

65. Prior to the filing of the present derivative action, Plaintiffs did not make a demand on the Company, its Board of Directors, or other members to initiate the present action, as such demand would have been a futile exercise. The Company is currently comprised of four members, two of whom are the Defendants, and the other two of whom are the Plaintiffs. As a result, any demand would have had to be made upon the very individuals who are the subject of this lawsuit. It is unreasonable to expect that the Defendants would agree to be sued by the Company, let alone initiate the action themselves on the Company's behalf.

66. Given the severity of the situation and the imminent and irreparable harm that the Company will suffer if the present complaint was not filed as soon as possible, Plaintiffs' demand to the Defendants would not have advanced the best interests of the Company.

67. Furthermore, pursuant to the decision of the Supreme Court of Puerto Rico, the Court of First Instance is required to appoint a judicial administrator who will assume control of the Company's assets and oversee the liquidation of those assets, including the MECA trademark. As the appointment of such a judicial administrator has not yet occurred, Plaintiffs have no alternative but to file this derivative action, seeking the Court's immediate intervention, without the need of making a prior demand on the Defendants.

68. The present derivative action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

69. The remedies sought by Plaintiffs are for the benefit of the Company, and any monetary relief that may be granted, is to be awarded directly to the Company, and not to Plaintiffs in their personal capacity, except those pertaining to the costs and attorneys' fees incurred by Plaintiffs in prosecuting this action.

### B. Second Cause of Action: Trademark Infringement (Unregistered Mark)

70. Plaintiffs allege and incorporate by reference the foregoing paragraphs.

71. Defendants' unauthorized use in commerce of the Company's mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by the Company, or that Defendants' business ventures are in some way affiliated with or sponsored by the Company. Defendants' conduct therefore constitutes trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72. Defendants have committed the foregoing acts of infringement with full knowledge of the Company's prior rights in the *MECA* trademark, and with the willful intent to cause confusion and trade on the Company's goodwill.

73. Defendants' conduct is causing immediate and irreparable harm and injury to the Company and to its goodwill and reputation and will continue to both damage the Company and confuse the public unless enjoined by this court. The Company has no adequate remedy at law.

7924793793613691714824

74. The Company is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## C.  Third Cause of Action: Federal Unfair Competition

75. Plaintiffs allege and incorporate by reference the foregoing paragraphs.

76. Defendants' unauthorized use in commerce of the Company's mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by the Company.

77. Defendants' unauthorized use in commerce of the Company's mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

78. Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants' separate business ventures with the Company.

79. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to the Company, and to its goodwill and reputation, and will

continue to both damage the Company and confuse the public unless enjoined by this court. The Company has no adequate remedy at law.

81. The Company is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### D. Fourth Cause of Action: Federal Trademark Dilution

82. Plaintiffs allege and incorporate by reference the foregoing paragraphs.

83. The Company's trademark is distinctive and a "famous mark" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

84. The Company's trademark became distinctive and famous prior to the Defendant's acts as alleged herein.

85. Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the Company's famous trademark.

86. Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act and have already caused the Company irreparable damage and will, unless enjoined, continue to so damage the Company, which has no adequate remedy at law.

87. The Company is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees,

and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

**E.  Fifth Cause of Action: Temporary Restraining Order, Preliminary and Permanent Injunctive Relief**

88. Plaintiffs allege and incorporate by reference the foregoing paragraphs.

89. Since the Company has demonstrated an overwhelming prospect of prevailing and complies with the overall criteria for the issuance of a preliminary and permanent injunction, it is hereby requested that Defendants be preliminarily and permanently enjoined from: a) using any form or style of the *MECA* trademark and any of its derivatives, including *Meca ArtHop* and *ArtHop*; b) Make any reference as to the Defendants' business being formerly known as *MECA*, or any variation thereof; c) using the Company's *MECA Art Fair* social media profiles, especially for promoting their business and appropriating the Company's goodwill; d) hosting any events that reference, mention, or otherwise associate the *MECA* trademark and any of its derivatives, including *Meca ArtHop* and *ArtHop*, to the Defendants' business; e) producing, advertising and/or selling any merchandise bearing any of the Company's trademarks, including *MECA*, *MECA ArtHop* and *ArtHop*; and f) selling, assigning or otherwise disposing of any of the Company's intellectual property.

90. Plaintiffs seek a preliminary and permanent injunction on behalf of the Company in the aforementioned manner because it has no adequate remedy at law to stop or remedy the irreparable harm being suffered as herein detailed.

91. A temporary restraining order should be granted because Defendants' acts are patently illegal and fraudulent, and cause immediate, concrete, and significant

irreparable damage to the Company and its members, and there is no other remedy at law to stop or remedy the irreparable harm being suffered as herein detailed.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court grant the causes of action herein set forth, and affords the remedies therein sought, such other and further relief as the Court deems just and equitable, and the payment of costs, interest, and attorney fees.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of November 2024.

### NOTICE OF ELECTRONIC FILING

**I HEREBY CERTIFY,** that on this date, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which will provide notice of this filing to the attorneys of record in the captioned case.

### UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, **Hazel Colón Vázquez**, of legal age, married, member of Mercado Caribeño, L3C, and resident of San Juan, Puerto Rico, hereby state under penalty of perjury, pursuant to the laws of the United States of America, 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief, all allegations herein contained are true and correct.

21

_____
Hazel Colón Vázquez

I, **María del Mar Frederique Guzmán**, of legal age, single, member of Mercado Caribeño, L3C, and resident of New York City, hereby state under penalty of perjury, pursuant to the laws of the United States of America, 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief, all allegations herein contained are true and correct.

_____
María del Mar Frederique Guzmán

**CARRIÓN FONSECA, LLC**
Attorney for Plaintiffs
P.O. Box 10197
San Juan, PR 00908
Tel. 787-612-7512
www.carrionfonseca.com

_s/ Salvador M. Carrión Fonseca_
Salvador M. Carrión Fonseca, Esq.
USDC-PR No. 305212
salvador@carrionfonseca.com